United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MICHELLE EDWARDS,

     Plaintiff,

     vs.

MICHAEL ASTRUE, Commissioner of Social
Security,

     Defendant.

Case No.: 4:12-cv-02056-KAW

ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S CROSS-
MOTION FOR SUMMARY JUDGMENT

Plaintiff Michelle Edwards ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. §
405(g), of a final decision of Michael Astrue, the Commissioner of Social Security ("Defendant").
Pending before the Court are the parties' cross-motions for summary judgment. Having considered
all the papers filed by the parties, the Court grants Plaintiff's motion for summary judgment, denies
the Commissioner's cross-motion for summary judgment, and remands the case for further
proceedings consistent with this order.

**I.    Background**

In October 2009, Plaintiff filed a Title II application for disability insurance benefits (DIB).
In June 2010, she filed a Title XVI application for supplemental security benefits (SSI).
Administrative Record (AR) 135, 139. Plaintiff's applications allege that she became disabled on
June 23, 2008. *Id.* Plaintiff's Title II application was denied initially and upon reconsideration. *Id.*
at 15.

1    Plaintiff requested a hearing before an ALJ; the hearing was held on January 14, 2011

2    before ALJ Robert P. Wenten. *Id.* The ALJ escalated Plaintiff's Title XVI application to the

3    hearing level of review. *Id.* Plaintiff, who was represented by an attorney at the hearing, testified.

4    *Id.* A Vocational Expert (VE) also testified at the hearing. *Id.*

5    Plaintiff testified at the hearing that she had worked for Macy's unloading trucks. *Id.* at 37-

6    38. She injured herself on the job, took leave, and then came back to work at Macy's for a year

7    after the injury while she was seeing doctors. *Id.* at 40. She stopped working in 2008. *Id.* at 41.

8    She had knee surgery, but her problems with her back and knee persisted. *Id.* She used a cane for

9    going outside and, for the three months before the hearing, while she was in the house. *Id.* at 42.

10   She was able to shower and dress herself, and do housework and cooking. *Id.* at 42-43. She was

11   able to do grocery shopping by using an electric buggy while in the store. *Id.* at 44. She stated that

12   she could probably do an office job if she could sit and take breaks, and that she could sit for 40

13   minutes before having to get up. *Id.* at 46-47.

14   In a February 23, 2011 decision, the ALJ found that Plaintiff was not disabled. *Id.* at 15-26.

15   Plaintiff requested that the Appeals Council review the ALJ's decision, and submitted additional

16   evidence to the Appeals Council. *Id.* at 9-11. The ALJ's decision became the final decision of the

17   Commissioner when the Appeals Council denied review on February 24, 2012. *Id.* at 1-5. Plaintiff

18   now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

19   **II.    Legal Standard**

20   A court may reverse the Commissioner's denial of disability benefits only when the

21   Commissioner's findings are 1) based on legal error or 2) are not supported by substantial evidence

22   in the record as a whole. 42 U.S.C. § 405(g); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

23   Substantial evidence is "more than a mere scintilla but less than a preponderance"; it is "such

24   relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at

25   1098; *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). In determining whether the

26   Commissioner's findings are supported by substantial evidence, the Court must consider the

27   evidence as a whole, weighing both the evidence that supports and the evidence that detracts from

28   the Commissioner's conclusion. *Id.* "Where evidence is susceptible to more than one rational

United States District Court
Northern District of California

2

United States District Court
Northern District of California

1   interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194,

2   1198 (9th Cir. 2008).

3          Under SSA regulations, the Commissioner must apply a five-step sequential process to

4   evaluate a disability benefits claim.  The claimant bears the burden of proof in steps one through

5   four. *Bustamante v. Massanari*, 262 F.3d 949, 953–954 (9th Cir. 2001). The burden shifts to the

6   Commissioner in step five.  *Id.* at 954.[1]

7   **III.    The ALJ's Decision**

8          The ALJ made the following findings.  Plaintiff had not engaged in substantial gainful

9   activity since the alleged date of onset of her disability.  AR 17.  Plaintiff had the following severe

10  impairments: lower back dysfunction, and history of right knee surgery, with residuals.  *Id.* Plaintiff

11  did not have an impairment or combination of impairments that met or medically equaled a listed

12  impairment.  *Id.* at 18.  Plaintiff had the residual functional capacity (RFC) to perform sedentary

13  work, "including lifting no more than 10 pounds at a time and occasionally lifting and carrying

14  smaller articles, except that she must be able to sit and stand at will; and must not be required to do

15  more than occasional stooping, crouching, or crawling." *Id.* at 18-19.  The ALJ further found that

16  Plaintiff was capable of frequent walking.  *Id.* at 19.  Plaintiff was unable to perform her past

17  relevant work as a bindery worker and a sales clerk.  *Id.* at 24.

18         The ALJ further found that Plaintiff was born in 1961 and was 47 years old on the alleged

19  disability date, which is defined as a younger individual (age 45-49).  *Id.*  She had more than a high

20  school education and was able to communicate in English.  *Id.*  Transferability of job skills was not

21

22  [1] At step one, the Commissioner determines whether a claimant is currently engaged in substantial
    gainful activity.  If so, the claimant is not disabled.  20 C.F.R. § 404.1520(b).  At step two, the
23  Commissioner determines whether the claimant has a "medically severe impairment or combination
    of impairments," as defined in 20 C.F.R. § 404.1520(c).  If the answer is no, the claimant is not
24  disabled.  If the answer is yes, the Commissioner proceeds to step three, and determines whether the
    impairment meets or equals a "listed" impairment.  20 C.F.R. § 404.1520(d).  If this requirement is
25  met, the claimant is disabled; if not, the Commissioner proceeds to step four. At step four, the
    Commissioner determines whether the claimant can still perform "past relevant work."  20 C.F.R. §
26  404.1520(e).  If the claimant can perform such work, she is not disabled.  If the claimant meets the
    burden of establishing an inability to perform prior work, the Commissioner must show, at step five,
27  that the claimant can perform other substantial gainful work that exists in the national economy.  20
28  C.F.R. § 1520(f). *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998).

1   material to the determination of disability because the Medical-Vocational rules support a finding

2   of "not disabled," regardless of whether Plaintiff had transferable job skills.  *Id.*  Considering

3   Plaintiff's age, education, work experience, and residual functional capacity, there were jobs

4   existing in significant numbers in the national economy that Plaintiff could perform.  *Id.*  Therefore,

5   Plaintiff was not disabled in the meaning of the Social Security Act.  *Id.* at 26.

6   **IV.      Analysis**

7          Plaintiff makes four arguments in her motion for summary judgment: that the ALJ failed to

8   resolve the conflict between the VE's testimony and the Dictionary of Occupational Titles (DOT);

9   the ALJ improperly credited the opinion of a non-examining, non-treating doctor, instead of the

10  opinions of examining and treating doctors; the ALJ's hypothetical to the VE was incomplete; and

11  the ALJ improperly rejected Plaintiff's testimony.  The Court addresses the arguments in the order

12  of the steps; that is, the arguments pertaining to the determination of Plaintiff's RFC are addressed

13  before the arguments pertaining to the VE's testimony.

14          **A.      The ALJ Did Not Err in Weighing Physician Opinions.**

15          Plaintiff argues that the ALJ erred in weighing physician opinions.  The opinions of

16  examining physicians are afforded more weight than those of non-examining physicians, and the

17  opinions of examining non-treating physicians are afforded less weight than those of treating

18  physicians.  *See* 20 C.F.R. § 404.1527(d)(1)-(2).  If a treating physician's opinion is well-supported

19  and not inconsistent with the other substantial evidence in the record, it is entitled to controlling

20  weight.  *Id.* § 404.1527(d)(2).  If a treating physician's opinion is not contradicted by another

21  physician, it may be rejected only for "clear and convincing" reasons supported by substantial

22  evidence in the record.  *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).  If the treating physician's

23  opinion is contradicted, the ALJ may only reject the opinion by providing "specific and legitimate

24  reasons" supported by substantial evidence in the record.  *Id.*  The ALJ must set "out a detailed and

25  thorough summary of the facts and conflicting clinical evidence, stat[e] his interpretation thereof,

26  and mak[e] findings."  *Id.*, citing *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).  If an

27  examining physician relies on the same clinical findings as a treating physician, but differs in his or

28

United States District Court
Northern District of California

4

1    her conclusions, the conclusions of the examining physician do not constitute "substantial

2    evidence." *Reddick*, 157 F.3d at 725.

3           Plaintiff argues that the ALJ erred in crediting the opinion of a non-examining doctor,

4    Acinas, while rejecting the opinions of examining doctors Lewis and Burt.  Dr. Burt examined

5    Plaintiff at the request of her attorney on December 10, 2010.  *Id.* at 436.  He found that Plaintiff

6    was permanently disabled, as she met a listing under both paragraph 1.04 (disorders of the spine)

7    and 1.02 (major dysfunction of a joint).  *Id.* at 443, citing  42 U.S.C. APP., 20 CFR PT. 404, Subpt.

8    P, App. 1.  He wrote that she could "no longer tolerate" "a lot of standing, walking, lifting, and

9    heavy physical activity," that she had to lie down frequently, and that she could not walk up stairs

10   or on uneven terrain.  *Id.*

11          Dr. Lewis, a state agency examining physician, examined Plaintiff on December 20, 2009.

12   AR 396.  Dr. Lewis opined that Plaintiff was limited to sitting up to two hours, standing and

13   walking for four blocks while using her cane, and lifting up to twenty pounds occasionally and ten

14   pounds frequently.  *Id.* at 399.  She could not climb, balance, stoop, kneel or crouch, and could not

15   work at heights or with heavy machinery.  *Id.*

16          Dr. Acinas did not examine or treat Plaintiff, but based her opinion on a review of her

17   medical records.  In Acinas' January 11, 2010 report, she found that Plaintiff had the following

18   limitations: she could occasionally lift and carry twenty pounds, frequently lift and carry ten

19   pounds, stand / walk for a total of six hours a day with her cane, sit for a total of 6 hours a day, had

20   to alternate sitting and standing, and was limited in her ability to push and pull in her lower

21   extremities.  *Id.* at 403.

22          The ALJ rejected Dr. Burt's opinion that Plaintiff met a listing.  *Id.* at 18.  Because Burt's

23   opinion was contradicted by other physician's opinions, the ALJ needed only to give specific,

24   legitimate reasons for rejecting Burt's opinions.  One of the ALJ's reasons for rejecting the opinion

25   was that Burt's specific findings did not match up with the criteria of the listing.  *Id.*  The ALJ noted

26   that listing 1.04A requires "Evidence of nerve root compression characterized by neuro-anatomic

27   distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle

28   weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement

United States District Court
Northern District of California

1 of the lower back, positive straight-leg raising test (sitting and supine)," and that listing 1.02A

2 requires "gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis,

3 instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal

4 motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint

5 space narrowing, bony destruction, or ankylosis of the affected joint(s) . . . . [and i]nvolvement of

6 one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to

7 ambulate effectively," but that Burt's notes did not support, and even contradicted, such findings in

8 this case. *Id.* The ALJ further explained that he did not find Burt's opinion persuasive because Burt

9 had apparently credited Plaintiff's complaints regarding constant low back pain and knee pain. *Id.*

10 at 24. Thus, the ALJ gave specific reasons for rejecting Burt's opinion. Plaintiff does not explain

11 why these reasons are not legitimate, and has provided the Court no persuasive reason to remand

12 the case on this basis.

13   Indeed, Plaintiff does not specifically challenge the ALJ's decision to give Burt's opinions

14 less weight; she merely argues that Lewis and Burt's findings corroborated each other, while

15 Acinas' "report is suspect." Pl's Mot. at 20. But it is the ALJ's duty to resolve conflicts, and this

16 Court may not reweigh the evidence or substitute its own judgment for that of the ALJ. *See*

17 *McKenzie v. Apfel*, 2001 WL 58845 (N.D. Cal. Jan. 5, 2001).

18   Similarly, the ALJ's rejection of Dr. Lewis' opinion is also supported by a specific,

19 legitimate reason. After discussing the records of Plaintiff's treating physicians, the ALJ noted that

20 Dr. Lewis had examined Plaintiff at the social security administration's request. AR at 22. Plaintiff

21 had "reported more extensive functional restrictions to Lewis than she had previously reported to

22 her treating physicians, or subsequently to me at the hearing." *Id.* For example, Plaintiff had told

23 Lewis she had difficulty getting out of bed in the morning, and had devised a method of rolling out

24 of bed. *Id.* She said that her pain woke her up at night, that she was unable to lie on her back, and

25 could not lie on her right side without pain awakening her. *Id.* She also could not lie with her

26 knees touching. *Id.* She was no longer able to wear high heels, but only tennis shoes. *Id.* She

27 could not get in and out of the bathtub. *Id.*

28

United States District Court
Northern District of California

6

In contrast, at the hearing, Plaintiff told the ALJ that pain caused her to wake up in the middle of the night, and that she was "tossing and turning," but did not mention that she had to have a method for getting out of bed. *Id.* at 41. She testified that she was able to take care of herself generally, could shower and dress by herself, and was able to do housework and some cooking. *Id.* at 42-43. Plaintiff's testimony that she could shower by herself conflicts with her statements to Lewis that she could not get in and out of the bathtub. Plaintiff's testimony at the hearing did not describe the more serious limitations she described to Lewis. The Court finds that these discrepancies constitute a specific, legitimate reason for rejecting Lewis' opinion.

Plaintiff further argues that the ALJ erred in crediting Dr. Acinas' opinion for two reasons: Acinas wrote that there was "limited medical evidence," and described Plaintiff's MRI studies as "unremarkable." *Id.* at 20. In fact, the ALJ wrote: "Dr. Acinas observed that the limited medical evidence of record consists mainly of imaging results and limited interim examinations until the consultative examination, which revealed normal range of motion in the knees, no muscle atrophy, normal motor testing, an inability to elicit reflexes on any joint, a limp in the claimant's gait, and her use of a cane." *Id.* at 23. The ALJ then stated that Dr. Acinas' interpretation of the evidence was similar to the ALJ's interpretation, although the ALJ disagreed with Acinas' finding that Plaintiff needed a cane. *Id.* The ALJ's use of the word "limited" in describing the medical evidence, especially when qualified by a description of the evidence, does not constitute a factual error that would warrant reversal.

Plaintiff further argues that Dr. Acinas' description of Plaintiff's MRI as "unremarkable" is untrue. But this description of the MRI is corroborated by several other doctors' opinions, including Dr. Jaffin, Dr. Miller, Dr. Vuksinich, and Dr. Kujac. AR 22, 297-98, 265, 238. The ALJ's crediting of Acinas' testimony does not constitute error.

**B.      The ALJ Did Not Err in Rejecting Some of Plaintiff's Subjective Complaints.**

Plaintiff argues that the ALJ erred in rejecting Plaintiff's subjective complaints regarding the severity of her impairments. In order to reject a claimant's subjective complaints, an ALJ must give "specific, cogent reasons for the disbelief." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). Without affirmative evidence showing that the claimant is malingering, the ALJ's reasons for

1   rejecting the claimant's testimony must be clear and convincing.  *See id.*; *Morgan v. Comm'r of Soc.*

2   *Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).  The ALJ resolves questions of credibility and

3   conflicts in the testimony.  *See Yuckert v. Bowen*, 841 F.2d 303, 307 (9th Cir.1988).

4       Plaintiff testified at the hearing about the functional limitations of her daily activities.  She

5   testified that she used her cane in the house "every once in a while," that she went to the DMV and

6   the grocery store by herself, and was able to carry her groceries in the house little by little.  AR 41-

7   45.  She agreed that she was "able to take care of [her]self generally," meaning that she dressed,

8   washed and groomed herself.  *Id.* at 42.  She did housekeeping and cooked, but had to sit down and

9   rest if she was standing in one place for more than ten minutes.  *Id.* at 43-44.

10      When the ALJ asked her if she could perform an office job where she could sit or stand at

11  will, Plaintiff stated "I probably could do it, but I would have to rest . . . while I sit there and I need

12  a little time to rest or something. . . . But I think I could do that."  *Id.* at 47.  When the ALJ asked if

13  she could "do it every day all week," she stated, "I would see no problem.  I think I could."  *Id.* at

14  47.  She then testified that because of low back pain, she would need to stand up or lay down every

15  40 minutes for a 30-minute interval.  *Id.* at 47-48.

16      The ALJ found that Plaintiff's statements regarding her symptoms were not entirely

17  credible.  AR at 23.  After noting that Plaintiff admitted that she was able to lift clothes out of the

18  dryer, lift bags of small items at the store, go grocery shopping three times a week, do household

19  cleaning, including wiping furniture, sweeping, and mopping floors, and drive a car for up to 30

20  minutes at a time, he wrote:

21      The limitations described in the claimant's testimony at the hearing are not as
        profoundly restricted as what she seems to have told the doctors, especially the
22      consultative physician.  Ms. Edwards testified that she can sit at her laptop computer
        for 40 minutes at a time, and then move around some.  She seems to be capable of
23      taking care of herself generally; she lives with her elderly mother and admitted to only
24      using a cane in the house recently.

25  AR 23.

26  Thus, the ALJ gave multiple reasons for finding Plaintiff's testimony was not entirely credible,

27  insofar as it was inconsistent with her ability to perform sedentary work with a sit/stand option,

28  light lifting, and no more than occasional stooping, crouching, or crawling.  Plaintiff's testimony at

1   the hearing was inconsistent with what she told her doctors; she testified that she could sit at a

2   computer for 40 minutes before needing to get up; and, she was able to take care of herself at home.

3         Plaintiff does not argue that these reasons for rejecting the testimony are unclear or

4   unconvincing; for example, she does not argue that they are based on inaccurate facts.  Instead,

5   Plaintiff argues that while the ALJ "itemized various reasons why she [sic] found [Plaintiff] not to

6   be credible," the reasons did not reflect the record as a whole, and that the ALJ did not explain how

7   Plaintiff's ability to perform these limited activities would translate into the ability to work a full-

8   time job.  Pl.'s Mot. Summ. J. at 23-24.  But Plaintiff does not explain what evidence in the record

9   contradicted the ALJ's credibility determination.  It is not this Court's job to reweigh the evidence.

10  *See Ryan*, 528 F.3d at 1198 ("Where evidence is susceptible to more than one rational

11  interpretation, the ALJ's decision should be upheld").  Therefore, the Court finds that the reasons

12  provided were sufficiently clear and convincing.  The ALJ's decision will not be overturned on this

13  basis.

14        **C.**      **The Hypothetical Posed By the ALJ was Not Incomplete.**

15        Plaintiff argues that the ALJ posed an incomplete hypothetical to the Vocational Expert

16  ("VE"), because the hypothetical did not take into account the limitations assessed by Doctors Lewis

17  and Burt.  This argument depends on the previous argument discussed—that the ALJ erred in

18  rejecting the opinions of Doctors Lewis and Burt.  Because the Court finds that the ALJ did not err in

19  rejecting the physician opinions, this argument fails as well.

20        **D.**      **The VE's Testimony Conflicted with the DOT, and the ALJ Did Not Resolve the**

21                  **Conflict.**

22        Finally, Plaintiff argues that the ALJ erred in failing to resolve the conflicts between the VE's

23  testimony and the Dictionary of Occupational Titles ("DOT").  Social Security Ruling ("SSR") 00–4p

24  requires an ALJ to ask a VE whether the VE's testimony conflicts with the DOT.  Here, the ALJ

25  indisputably did not do so, but did write in his opinion that the testimony was consistent with the

26  DOT.  AR 25.  Error in failing to follow SSP 00-4p is harmless only if: 1) there was no conflict; or 2)

27  the VE provided sufficient support for his conclusion to justify any potential conflicts.  *Massachi v.*

28  *Astrue*, 486 F.3d 1149, 1153-54, n.19 (9th Cir. 2007).  The Court finds that the error is not harmless.

United States District Court
Northern District of California

United States District Court
Northern District of California

As noted above, the ALJ found that Plaintiff had the residual functional capacity "to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) including lifting no more than 10 lbs. at a time and occasionally lifting and carrying smaller articles, except that she must be able to sit and stand at will; and must not be required to do more than occasional stooping, crouching, or crawling. She is capable of frequent walking." *Id.* at 18-19. At the hearing, the ALJ asked the VE whether unskilled jobs existed for a person who needed to sit and stand at will; could exert herself "at the level of sedentary moving of weights"; could no more than occasionally stoop, crouch or crawl; and could frequently walk. *Id.* at 51. The VE testified that because such a person needed a sit/ stand option, she could perform half of all Parking Lot Attendant and Cashier II jobs. *Id.* at 52. The VE testified that these occupations were considered unskilled light occupations. *Id.*

Plaintiff argues that the VE's testimony conflicted with the DOT because: 1) "the VE did not identify a 'sedentary' occupation consistent with some kind of a sit/stand option . . . but only cited 'light occupations'"; and 2) the need for a sit/ stand option conflicts with the DOT.

The first argument—that the VE provided light, not sedentary, occupations—does not reflect a conflict between the VE's testimony and the DOT. Plaintiff does not argue that the DOT contradicts the VE's testimony that the jobs he described were unskilled light jobs. Rather, Plaintiff seems to be arguing that there is an inconsistency between the ALJ's finding that Plaintiff could perform sedentary work, with some limitations, but frequent walking, and the VE's testimony that Plaintiff could perform some light jobs.

This seeming inconsistency is rectified by a close reading of the ALJ's RFC finding and questions at the hearing. The ALJ found that Plaintiff had the RFC "to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) including lifting no more than 10 lbs. at a time and occasionally lifting and carrying smaller articles, except that she must be able to sit and stand at will; and must not be required to do more than occasional stooping, crouching, or crawling. She is capable of frequent walking." AR at 18-19. Sedentary work, as defined in these code sections, "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if

United States District Court
Northern District of California

1    walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. §§

2    416.967(a), 404.1567(a).  Thus, the sedentary work description involves two parts: a limitation on

3    lifting and carrying, and a limitation on walking and standing.  In contrast, a light job requires "lifting

4    no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10

5    pounds. Even though the weight lifted may be very little, a job is in this category when it requires a

6    good deal of walking or standing, or when it involves sitting most of the time with some pushing and

7    pulling of arm or leg controls."  20 C.F.R. §§ 416.967(b), 404.1567(b).

8         The ALJ found that Plaintiff was capable of sedentary work, but qualified that description by

9    finding that Plaintiff must be able to sit and stand at will, and was capable of frequent walking.  These

10   requirements essentially voided the second part of the definition of sedentary work.  Because the ALJ

11   found that Plaintiff was able to walk frequently, the RFC also contained a component of the light

12   work definition.  Accordingly, the final RFC was made up of sedentary lifting and carrying ability,

13   light walking ability, and the additional requirement that Plaintiff be allowed to sit or stand at will.

14   The ALJ's hypothetical to the VE reflected this RFC, and the VE's testimony reflected this RFC as

15   well.

16        Plaintiff's second argument is that the need for a sit/ stand option automatically creates a

17   conflict with the DOT, and that the VE's testimony in this case failed to provide sufficient support for

18   his conclusion so as to justify the conflict.  At the hearing, the ALJ asked the VE what jobs a person

19   with the RFC he had assessed for Plaintiff could perform.  AR at 51-52.  The VE testified that "the

20   problem is sitting and standing at will." *Id.* at 52.  He testified that the hypothetical person could

21   perform the jobs of parking lot attendant and cashier II, but that the numbers would need to be

22   diminished by half in order to account for positions that would not allow at-will sitting or standing.

23   *Id.*  By way of explanation, the VE testified that he reduced the numbers by 50% because "I do think

24   they allow for the use of a stool to sit . . . in many such settings."  *Id.*  The VE did not explain why he

25   thought that half of the jobs allowed the use of a stool, or what experience or data he based this

26   opinion on.

27        Plaintiff cites an unpublished Ninth Circuit panel decision, *Coleman v. Astrue*, 423 F. App'x

28   754, 755 (9th Cir. 2011).  Because the decision is unpublished, it does not have precedential value.  In

11

*Coleman*, the ALJ had determined that the plaintiff had the residual functional capacity to perform sedentary or light work, so long as she could switch between sitting, standing, and walking.  *Id.*  The Circuit noted that "under the DOT's definitions, sedentary work 'involves sitting most of the time,' and the relevant type of light work 'requires walking or standing to a significant degree.'"  *Id.*  Despite the fact that many of the light and sedentary occupations could not accommodate the required sit/ stand/ walk option, the VE testified that the plaintiff could perform some of the occupations.  *Id.* at 756.  His testimony therefore created an apparent conflict with the DOT.  *Id.*  The error was not harmless, because the VE did not provide sufficient support for his conclusion so as to justify the conflict.  *Id.*  Instead, "[t]he VE's explanations for this testimony were brief and, so far as the record reveals, involved uninformed guesswork about the nature of the specified occupations."  *Id.*

Similarly, district court cases from this district have held that a VE's testimony that a plaintiff who needed a sit/ stand option could perform a certain job, where the DOT description did not explicitly provide for a sit/stand option, and the VE did not sufficiently explain the conflict, created reversible error.  In *Smith v. Astrue*, the VE testified that there were "a lot of" light and sedentary jobs, such as general assembly and shade assembler, that would allow the plaintiff to sit or stand at will.  2010 WL 5776060 at \*11 (N.D. Cal. Sept. 16, 2010).  The VE did not explain how he came to the conclusion that these jobs offered a sit/ stand option.  *Id.*  The Court wrote, "Simply identifying positions . . . does not provide any explanation as to why the VE believed such positions would accommodate a sit/stand option."  *Id.*  In *Barat v. Astrue*, the VE testified that there were a significant number of cashier II jobs that the plaintiff could perform, because a significant number of such positions offered a sit/ stand option.  2011 WL 2446280 at \*4.  Citing *Smith*, the Court noted that the VE did not explain the basis for his opinion, "for example, by providing details regarding the placement he had 'observed' allowing a sit/stand option," and vacated the ALJ's decision.  *Id.* at \*5.  The *Barat* Court noted that even though the VE had forty years of experience, the ALJ should not have simply deferred to his experience alone.  *Id.*

This Court finds the reasoning in *Coleman*, *Smith*, and *Barat* persuasive, and reaches a similar result in this case.  Here, Plaintiff needed a sit/stand option, and although the VE testified that

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Plaintiff could perform "light" jobs, the DOT descriptions for the jobs do not discuss the ability to sit

2    or stand at will. This creates an apparent conflict between the VE's testimony and the DOT.

3         The VE's testimony did not provide sufficient support for his conclusion so as to justify the

4    conflict. The VE stated, "I do think they allow the use of a stool to sit . . . in many such settings." AR

5    52. He did not explicitly state that he actually *knew* that the jobs provided a sit/stand option. Nor did

6    he explain *why* he thought that half of the jobs did provide a sit/ stand option, or explain what data or

7    evidence his opinion was based on. By using the word "think," the VE implied that his opinion

8    regarding the sit/stand option was nothing more than guesswork or speculation.

9         The facts of this case are distinguishable from the facts in another Ninth Circuit case, *Buckner-*

10   *Larkin v. Astrue*. 450 F. App'x 626, 628-29 (9th Cir. 2011). In that case, the Court found that the

11   VE's opinion that certain jobs would allow for a sit/ stand option was sufficiently supported by the

12   VE's testimony that he based his opinion on his own labor market surveys, experience, and research.

13   *Id.* Here, the VE did not give any explanation as to why he thought that about half of the positions

14   provided a sit/ stand option. *See also Smith v. Astrue*, 2011 WL 5294848 at \*5-6 (N.D. Cal. 2011)

15   (conflict between VE's testimony and DOT was harmless, as the VE testified that she based her

16   opinion on her professional experience, including a two-year-old study at Lens crafters).

17        Defendant cites *Harvey v. Astrue* in support of its position that since the DOT is silent on the

18   issue of whether jobs allow a sit/ stand option, a VE's testimony regarding a sit/ stand option does not

19   conflict with the DOT, but merely supplements it. *See* 2010 WL 2836817 at \*13-14 (N.D. Cal. July

20   16, 2010). For the reasons explained above, the Court does not find this reasoning convincing, and

21   declines to follow *Harvey*. Similarly, the Court declines to follow dicta in *Jeffries v. Astrue*, 2011 WL

22   3359710 at \*3-4 (N.D. Cal. Aug. 2, 2011). In that case, the court held that there was no conflict

23   between the VE's testimony and the DOT with respect to one category of jobs—which was sufficient

24   by itself to affirm the ALJ's decision. *Id.* In dicta, the court wrote that with respect to a different

25   category of jobs where there was a conflict between the VE's testimony and the DOT, the conflict was

26   harmless because the VE reduced the number of jobs by 75%. *Id.* To the extent that *Jeffries* implies

27   that a VE's reduction of the number of jobs available, based on a certain limitation, is in and of itself

28   sufficient support for a VE's conclusion, this Court disagrees.

1      Because there was an apparent conflict between the VE's testimony and the DOT, the ALJ

2  failed to resolve the conflict, and the error was not harmless, the case must be remanded for further

3  proceedings.

4  **V.      Conclusion**

5      For the reasons explained above, Plaintiff's motion for summary judgment is GRANTED;

6  Defendant's cross-motion for summary judgment is DENIED; and this action is REMANDED to the

7  Commissioner pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings consistent

8  with this order.

9      The Clerk of the Court shall close this case.

10      IT IS SO ORDERED.

11

12  DATE: May 6, 2013                            _____

13                                               KANDIS A. WESTMORE
                                                 UNITED STATES MAGISTRATE JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28