# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE EDWARDS,<br><br>     Plaintiff,<br><br>vs.<br><br>MICHAEL ASTRUE, Commissioner of Social Security,<br><br>     Defendant. | Case No.: 4:12-cv-02056-KAW<br><br>ORDER AWARDING ATTORNEY'S FEES |

Michelle Edwards ("Plaintiff") submitted an application for attorney's fees pursuant to the Equal Access to Justice Act, ("EAJA") 28 U.S.C. section 2412. Carolyn W. Colvin,[1] Acting Commissioner of Social Security ("Defendant"), opposes the motion on the grounds that the government's position was substantially justified and that the fees requested are unreasonable. The court grants Plaintiff's application, as set forth below.

## I. Background

**A.  Plaintiff's applications for benefits and the administrative proceedings.**

In October 2009, Plaintiff filed a Title II application for disability insurance benefits. (Administrative Record ("AR") at 135, 139). That application was denied initially and upon reconsideration. (*Id.* at 15). In June 2010, Plaintiff filed a Title XVI application for supplemental

---

[1] Carolyn W. Colvin is substituted for Commissioner Michael J. Astrue as Defendant. *See* FED. R. CIV. P. 25(d)(1).

security benefits. *(Id.)* In both applications, Plaintiff alleged that she became disabled on June 23, 2008. *(Id.)*

Plaintiff requested a hearing before an administrative law judge ("ALJ"). *(Id.)* The hearing was held on January 14, 2011 before ALJ Robert P. Wenten. *(Id.)* At the hearing, Plaintiff testified as follows. She had worked for Macy's unloading trucks. (*Id.* at 37-38). She injured herself on the job, took leave, and then resumed work at Macy's for a year after the injury. (*Id.* at 40). During that time, she continued to see doctors. *(Id.)* She stopped working in 2008. (*Id.* at 41). She had knee surgery, but problems with her back and knee persisted. *(Id.)* She used a cane for going outside, and for the three months before the hearing, while she was in the house. (*Id.* at 42). She was able to shower and dress herself, and do housework and cooking. (*Id.* at 42-43). She was able to do grocery shopping by using an electric buggy while in the store. (*Id.* at 44). She stated that she could probably do an office job if she could sit and take breaks, and that she could sit for 40 minutes before having to get up. (*Id.* at 46-47).

In a February 23, 2011 decision, the ALJ determined that Plaintiff was not disabled. (*Id.* at 15-26). The ALJ made the following findings. Plaintiff had not engaged in substantial gainful activity since the alleged date of onset of her disability. (*Id.* at 17). Plaintiff had the following severe impairments: lower back dysfunction, and history of right knee surgery, with residuals. *(Id.)* Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (*Id.* at 18). Plaintiff had the residual functional capacity to perform sedentary work, "including lifting no more than 10 pounds at a time and occasionally lifting and carrying smaller articles, except that she must be able to sit and stand at will, and must not be required to do more than occasional stooping, crouching, or crawling." (*Id.* at 18-19). Plaintiff was capable of frequent walking. (*Id.* at 19). Plaintiff was unable to perform her past relevant work as a bindery worker and a sales clerk. (*Id.* at 24).

The ALJ also found that Plaintiff was born in 1961 and was 47 years old on the alleged disability date, which is defined as a younger individual (age 45-49). *(Id.)* She had more than a high school education and was able to communicate in English. *(Id.)* Transferability of job skills was not material to the determination of disability because the Medical-Vocational rules supported

a finding of "not disabled," regardless of whether Plaintiff had transferable job skills. *(Id.)* Considering Plaintiff's age, education, work experience, and residual functional capacity, there were jobs existing in significant numbers in the national economy that Plaintiff could perform. *(Id.)* On that basis, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act. *(Id.* at 26). In reaching this conclusion, the ALJ also relied on vocational expert testimony. *(Id.* at 25). The ALJ did not, however, as Social Security Ruling ("SSR") 00–4p requires, ask the VE whether the VE's testimony conflicted with the Dictionary of Occupational Titles ("DOT"). *(Id.)* Nonetheless, the ALJ wrote in his opinion that the testimony was consistent with the DOT. *(Id.)*

### B. Review of the ALJ's decision.

Plaintiff requested that the Appeals Council review the ALJ's decision, and submitted additional evidence to the Appeals Council. (*Id.* at 9-11). The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied review on February 24, 2012. (*Id.* at 1-5). Plaintiff then sought judicial review of the Commissioner's decision pursuant to 42 U.S.C. section 405(g). (Compl.; Dkt. No. 1). The parties filed cross motions for summary judgment. (Dkt. Nos. 18, 25). After reviewing the papers filed by the parties, this court determined that there was an apparent conflict between the VE's testimony and the DOT, that the ALJ failed to resolve the conflict, and that the error was not harmless. (Order Granting Pl.'s Mot. for Summ. J. and Denying Def.'s Cross Mot. for Summ. J. at 14; Dkt. No. 27). On this basis, the court granted Plaintiff's motion for summary judgment, denied the Commissioner's cross motion for summary judgment, and remanded the action to the Commissioner pursuant to sentence four of 42 U.S.C. section 405(g). *(Id.)*

### C. Plaintiff's application for attorney's fees.

On July 17, 2013, Plaintiff submitted the instant fee application, seeking an award of $7,563.90 in attorney's fees pursuant to the EAJA, 28 U.S.C. section 2412. (Sackett Decl. in Support of Fee App. ("1st Sackett Decl.") at 5; Dkt. No. 29). That amount accounts for 37.5 hours of attorney time and 6.15 hours of paralegal time. (*Id.* at 3, 4). Those hours are supported by an itemization of services rendered from March 14, 2012 to July 12, 2013. (*Id.* at 2-5).

In its opposition, the Commissioner correctly points out that Plaintiff seeks an order awarding attorney's fees, not attorney's fees and costs.  (*See* 1st Sackett Decl. at 2-5; Dkt. No. 29). The court presumes this is deliberate, as the fee agreement between Plaintiff and her counsel specifies that Plaintiff will reimburse counsel's firm for any costs.  (Pl.'s Mem. Supp. App. for Fees, Ex. A at 2).  In that agreement, Plaintiff also assigns counsel's firm "payment of attorney's fees awarded pursuant to the Equal Access to Justice Act."  *(Id.)*  In Plaintiff's reply, the amount sought is amended to include an additional $693.55 in attorney's fees for 3.6 hours spent litigating the instant fee application, raising the total amount requested to $8,227.45.  (Supp. Decl. in Support of Fee App. ("2d Sackett Decl.") at 2; Dkt. No. 31).

## II.   DISCUSSION

The EAJA shifts the burden of attorney's fees from the private litigant to the government in order to reduce the chance that the expense of legal representation will deter defense against unreasonable government action.  *Wolverton v. Heckler*, 726 F.2d 580, 582 (9th Cir. 1984).  "[A] litigant is entitled to attorney's fees and costs if (1) [s]he is the prevailing party, (2) the government fails to show that its position was substantially justified or that special circumstances make an award unjust, and (3) the requested attorney's fees and costs are reasonable.  28 U.S.C. § 2412(d)(1)(A); *Carbonell v. INS*, 429 F.3d 894, 898 (9th Cir. 2005) (citing *Perez-Arellano v. Smith*, 279 F.3d 791, 793 (9th Cir. 2002)) (further citation omitted).  Recovery under the EAJA is generally limited to $125 per hour, "unless the court determines that an increase in the cost of living or a special factor . . . justifies a higher fee."  28 U.S.C. § 2412(d)(2)(A); *Penrod v. Apfel*, 54 F. Supp. 2d 961, 963 & n.3 (D. Ariz. 1999) (awarding fees based on hourly rate of $128.75 to reflect increase in the Consumer Price Index).

### A.   Plaintiff is the prevailing party.

An applicant for Social Security benefits who receives a remand under sentence four of 42 U.S.C. section 405(g) is a prevailing party, regardless of whether the applicant later succeeds in obtaining the requested benefits.  *Shalala v. Shaefar*, 509 U.S. 292, 302, 113 S. Ct. 2625, 125 L. Ed. 2d 239 (1993); *Penrod*, 54 F. Supp. 2d at 963.

The court remanded this action to the ALJ pursuant to sentence four of 42 U.S.C. section 405(g). Order Granting Pl.'s Mot. for Summ. J. and Denying Def.'s Cross-Mot. for Summ. J. at 14. Plaintiff is therefore a prevailing party. *See Shalala*, 509 U.S. at 302; *Penrod*, 54 F. Supp. 2d at 963.

**B.     The Commissioner has not shown that its position was substantially justified.**

The government bears the burden of showing that its position was, as a whole, substantially justified. *Gutierrez v. Barnhart*, 274 F.3d 1255, 1258 (9th Cir. 2001) ("*Gutierrez II*"). To meet this standard, the government must advance a position that is "justified in substance or in the main — that is, justified to a degree that could satisfy a reasonable person." *Le v. Astrue*, 529 F.3d 1200, 1201 (9th Cir. 2008) (citation and internal quotations omitted). In making this determination, a court "must focus on two questions: first, whether the government was substantially justified in taking its original action; and, second, whether the government was substantially justified in defending the validity of the action in court." *Gutierrez*, 274 F.3d at 1258-59 (quotations, citations, and modifications omitted). The Commissioner must show that her position was substantially justified "with respect to the issue on which the court based its remand." *Flores v. Shalala*, 49 F.3d 562, 569 (9th Cir. 1995). It is an abuse of discretion to find "that an agency's position was substantially justified when the agency's position was based on violations of . . . the agency's own regulations . . . ." *Gutierrez II*, 274 F.3d at 1259-60 (citing *Mendenhall v. NTSB*, 92 F.3d 871, 874 (9th Cir. 1996)).

In *Gutierrez v. Apfel*, 199 F.3d 1048, 1050 (9th Cir. 2000) (*Gutierrez I*), *superseded by regulation as stated in Blackmon v. Astrue*, 719 F. Supp. 2d 80, 92 (D.D.C. 2010), the Ninth Circuit addressed the question of whether an ALJ's failure to complete and append the required psychiatric review technique form ("PRTF") to its decision warranted reversal of the district court's decision upholding the ALJ's denial of benefits. *Gutierrez I*, 199 F.3d at 1050. The Ninth Circuit held that it did, because the claimant in the case had a non-frivolous claim of mental impairment in which the appropriate evaluation of the claimant's condition was material to a lawful decision on the claim. *Id.* The Ninth Circuit also noted that its decision was consistent with cases holding that the failure

to fill out the PRTF does not require reversal where there is no viable claim of mental impairment. *Id.* at 1051.

In *Gutierrez II*, the prevailing plaintiff moved for an award of attorney's fees pursuant to the EAJA. 274 F.3d at 1258. The district court denied the motion, concluding that the government was substantially justified in defending the ALJ's failure to fill out the PRTF because the Ninth Circuit had not ruled on the implications of such a failure. *Id.* On appeal, the Ninth Circuit determined that the district court erred in not addressing the reasonableness of the underlying conduct and basing its denial of fees solely on the government's litigation position. *Id.* at 1259. The court held that the government's position, as a whole, was not substantially justified. *Id.* at 1261. First, the Ninth Circuit determined that the underlying conduct, namely, the ALJ's failure complete and attach the required PRTF to its decision, was not substantially justified, as there was nothing ambiguous about the requirement. *Id.* at 1259-60. Second, the Ninth Circuit concluded that the government's litigation position was not substantially justified, as it had premised its arguments on a case involving a different agency and different facts, despite more relevant authority. *Id.* at 1261.

In *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007), the Ninth Circuit squarely addressed the question of "whether, in light of the requirements of Social Security Ruling ("SSR") 00-4p, an administrative law judge . . . may rely on the testimony of a vocational expert without first inquiring whether the expert's testimony conflicts with the Dictionary of Occupational Titles." 486 F.3d at 1152. The Ninth Circuit held that "an ALJ may not" and explained that: "the ALJ must first determine whether a conflict exists. If it does, the ALJ must then determine whether the vocational expert's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the Dictionary of Occupational Titles." *Id.* at 1152, 1153. The court remanded the case with instructions that the ALJ "perform the appropriate inquiries under SSR 00-4p." *Id.* at 1154.

1. <u>The ALJ's failure to follow SSR 004-p was not substantially justified.</u>

The Commissioner concedes that SSR 00-4p requires that an ALJ ask a vocational expert whether his testimony conflicts with the DOT. Def.'s Opp. at 3. The Commissioner also acknowledges that in this case, the ALJ "did not expressly ask the question." *Id.* The

6

Commissioner nonetheless argues that the ALJ's failure to do so was reasonable. *Id.* The court disagrees.

The Commissioner cites *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) for the proposition that an ALJ may rely on testimony of a vocational expert, whose expertise provides the necessary foundation for his testimony, and *Petri v. Astrue*, No. CV 10-2466-PHX-JAT, 2012 WL 4513647, at *3 (D. Ariz. Oct. 2, 2012) for the proposition that an ALJ's reliance on vocational expert testimony was substantially justified in a case where the claimant failed to question the vocational expert or raise any objections based on that testimony to the ALJ. (Def.'s Opp. at 3). The Commissioner's reliance on these cases is misplaced in light of the Ninth Circuit authorities discussed above.

This court follows the Ninth Circuit's decisions in *Massachi*, 486 F.3d at 1152; *Gutierrez I*, 199 F.3d at 1050; *Gutierrez II*, 274 F.3d at 1259-60; and concludes that the ALJ's failure to follow SSR 004-p in this case was not substantially justified.

2. <u>The Commissioner's position in this litigation was not substantially justified.</u>

As to the Commissioner's position in this litigation, the Commissioner asserts that it was reasonable to argue that the ALJ's error was harmless[2] based on case law and agency policy. (Def.'s Opp. at 3). Moreover, the Commissioner argues that this court should default to the conclusion that her position in this litigation was substantially justified because of the lack of "clear, controlling precedent" on the issues the ALJ is to resolve on remand—(1) whether a claimant's need for a sit/stand option created a conflict with the DOT and (2) if so, whether a VE's testimony (based on his expertise and professional experience alone) that certain jobs would accommodate a claimant's need for a sit/stand option provided sufficient support to justify the conflict. *Id.* Again, the court disagrees.

Whether the subject of litigation is an issue of first impression is one factor the court looks at when determining whether a government's litigation position is substantially justified. The lack of controlling authority, however, does not automatically render the Commissioner's position in

---

[2]An ALJ's failure to follow SSR 004-p is harmless where there is no conflict or the vocational expert provided sufficient support for his conclusions so as to justify any potential conflicts. *Massachi*, 486 F.3d at 1153-54 n.19.

litigation substantially justified. *See Gutierrez II*, 274 F.3d at 1261 (noting that there is no "first impression free pass"). In this case, the ALJ failed to adhere to SSR 00-4p, which "unambiguously provides that when a vocational expert provides evidence about the requirements of a job or occupation, the adjudicator has an *affirmative responsibility* to ask about any possible conflict between that vocational expert evidence and information provided in the Dictionary of Occupational Titles." *Massachi*, 486, F.3d at 1152 (emphasis in original; internal modifications, quotations, and footnote omitted). The Commissioner acknowledges that the ALJ "did not expressly ask the question." (Def.'s Opp. at 3). In addition, while the ALJ "did not expressly ask the question," *see id.*, the ALJ nonetheless wrote in his opinion that the testimony was consistent with the DOT. (AR at 25). These circumstances do not support the conclusion that the position the Commissioner advanced in its litigation in defending this procedural error was substantially justified. *See Gutierrez II*, 274 F.3d at 1259-60 (It is an abuse of discretion to find "that an agency's position was substantially justified when the agency's position was based on violations of . . . the agency's own regulations . . . .") (citing *Mendenhall*, 92 F.3d at 874). Accordingly, this court concludes that the Commissioner's position, as a whole, was not substantially justified.

## C. The requested attorney's fees.

Plaintiff's counsel seeks an order awarding a total of $8,227.45 in attorney's fees. (1st Sackett Decl. at 5; 2d Sackett Decl. at 2). That amount accounts for 41.1 hours of attorney time at a rate of $184.32 per hour and 6.15 hours of paralegal time at a rate of $106.00 per hour. (1st Sackett Decl. at 5; 2d Sackett Decl. at 2). The hours of attorney time for which Plaintiff's counsel seeks compensation includes 3.6 hours for litigating the instant fee application and 22.2 hours for drafting the opening brief in support of Plaintiff's motion for summary judgment. (1st Sackett Decl. at 2, 3; 2d Sackett Decl. at 2).

The Commissioner argues that the number of hours Plaintiff's attorney claims to have spent litigating this action is unreasonable. (Def.'s Opp. at 7). Specifically, the Commissioner asserts that the 22.2 hours Plaintiff's attorney spent drafting the opening brief are excessive and that the court should reduce that number to 14.8 hours. (*Id.* at 8). The court agrees.

8

The EAJA directs the court to award reasonable fees. 28 U.S.C. § 2412(d)(2)(A). In determining whether a fee is reasonable, the court considers the hours expended, the reasonable hourly rate, and the results obtained. *See Commissioner, INS v. Jean*, 496 U.S. 154, 110 S. Ct. 2316, 110 L. Ed. 2d 134 (1990); *Hensley v. Eckerhart*, 461 U.S. 424, 429, 102 S. Ct. 1933, 76 L. Ed. 2d 40 (1983), *abrogated on other grounds by Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 109 S. Ct. 1486, 103 L. Ed. 2d 866 (1989); *Passatino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 515 (9th Cir. 2000); *Atkins v. Apfel*, 154 F.3d 986 (9th Cir. 1998). While the EAJA sets a maximum fee of $125 per hour, "courts may adjust that fee to compensate for an increase in the cost of living by multiplying the basic EAJA rate by the current consumer price index for urban consumers (CPI-U), and then dividing the product by the CPI-U in the month that the cap was imposed." *Sorenson v. Mink*, 239 F.3d 1140, 1148 (9th Cir. 2001) (remanding with instructions that district court calculate cost of living adjustment according to the CPI-U for the year in which the fees were earned).

Plaintiff's counsel has substantial expertise litigating Social Security cases. (*See* 1st Sackett Decl. at 1). He has exclusively practiced in this area of law since 1980. *(Id.)* He has represented over ten thousand claimants. (*Id.* at 1-2). In this case, Plaintiff counsel seeks compensation for a total of 22.2 hours for drafting the opening brief. (1st Sackett Decl. at 2, 3). This excludes the additional 6.4 hours he spent reviewing the record, which are billed separately. (*Id.* at 2). The opening brief contained a modest amount of original content. (*See* Pl.'s Br. Summ. J.) Five pages of the 27-page brief contain footnotes comprising at least one-third of a page. (*See id.* at 6, 7, 8 17, 18). The brief also contains a number of long block quotations which likely took very little time to insert into the brief. (*Id.* at 6 n.46, 8 n.53, 17 n.113, 23-24). Combined with the straightforward nature of this case and counsel's considerable experience litigating these matters, this supports a reduction of time spent drafting the opening brief to 14.8 hours. This is a reduction of 7.4 hours.

The court finds that 33.7 hours of attorney time and 6.15 hours of paralegal time are reasonable and compensable. The court also finds that the hourly rates requested, $184.32 per hour for attorney time and $106.00 per hour for paralegal time, are appropriate in light of counsel's

substantial expertise, years of experience, and the appropriate cost of living adjustment.[3] Accordingly, the total amount of fees awarded is $6,863.48.

Pursuant to *Astrue v. Ratliff*, ⎯⎯ U.S. ⎯⎯, 130 S. Ct. 2521, 177 L. Ed. 2d 91 (2010), the fees are payable to Plaintiff. *See also McCarty v. Astrue*, 505 F. Supp. 2d 624, 629 (N.D. Cal. 2007) ("The Supreme Court, the Ninth Circuit, and other Circuits have similarly interpreted other fee-shifting statutes with "prevailing party" language to award attorneys' fees directly to the party and not the party's attorney."). The Commissioner may, in her discretion, direct the payment to plaintiff's counsel pursuant the fee agreement between Plaintiff and her counsel.

### III.  CONCLUSION

Based on the foregoing, Plaintiff's application for attorney's fees is granted as set forth above.

IT IS SO ORDERED.

DATE: September 27, 2013

_____
KANDIS A. WESTMORE
United States Magistrate Judge

---

[3] The court calculated the cost of living adjustment based on the framework set out in *Sorenson*, 239 F.3d at 1148.